Filed 10/9/14  In re Greg N. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re GREG N., a Person Coming Under the Juvenile Court Law. | B255170 (Los Angeles County Super. Ct. No. CK82889) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. EDITH G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephen Marpet, Juvenile Court Referee.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court adjudged newborn Greg N. a dependent of the court under Welfare and Institutions Code section 300, subdivision (b) (failure to protect).[1] Edith G. (Mother) appeals from the court's March 12, 2014 order summarily denying without a hearing her second section 388 petition for modification of the court's orders removing Greg from her care and terminating family reunification services, claiming she presented prima facie evidence of changed circumstances and the proposed change of order for continued reunification services would promote Greg's best interests. Because Mother showed, at best, changing rather than changed circumstances, and failed to show the proposed change of order would promote Greg's best interests, we conclude the court did not abuse its discretion when it summarily denied her second section 388 petition.

Mother also contends the juvenile court erred when it determined she failed to establish the beneficial parent-child relationship exception to the termination of parental rights. We disagree because there was no evidence their relationship was so significant as to outweigh the strong statutory preference for adoption. Greg's father, Greg N., Sr. (Father), is deceased.

We affirm the orders of the juvenile court.

## BACKGROUND

### A. The section 300, subdivision (b) petition

On January 24, 2013, shortly after Greg's birth, the Department of Children and Family Services (DCFS) filed a section 300 petition on his behalf. As sustained, the petition alleged Mother had a nine-year history of substance abuse, was a current user of methamphetamine, and had used illicit drugs during her pregnancy with Greg.

The events leading up to the sustaining of the petition were as follows. On January 18, 2013, DCFS received a referral that Mother had given birth to Greg. Two months earlier, Mother's parental rights as to her daughter, Janis G., had been terminated.

DCFS reported to the juvenile court Mother had an extensive drug abuse history from age 13; had abused methamphetamine, ecstasy, plant-based hallucinogens, and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

alcohol; had been hospitalized at least once for an overdose; had enrolled in but never completed substance abuse programs; and had been physically violent toward maternal grandmother, resulting in Mother's arrest for battery. Mother had failed to reunite with Janis because of Mother's substance abuse problems and her failure to maintain a relationship with Janis. Maternal aunt Claudia G. had adopted Janis and would not permit Mother to contact her. Father had died a month before Greg was born, of "'[e]nd stage congestive heart failure and Polysubstance drug abuse,'" and Mother was residing with maternal aunt Enid C.

Mother had used methamphetamine during the first four months she was pregnant with Greg. She was not concerned about using drugs during her pregnancy because she had planned to have an abortion, but then later changed her mind. When she was six months' pregnant, she had been arrested and incarcerated for burglary, which she admitted helped her to stop using drugs for a time. Mother had a criminal history of arrests for theft, burglary, possession of controlled substances, vandalism, and battery. Mother and Greg tested negative for drugs at his birth.

On January 24, 2013, Greg was detained with maternal aunt Enid and her husband Omar C. Mother was ordered monitored visits and reunification services, including referrals for substance abuse counseling, weekly random drug testing, parenting classes and counseling.

Subsequently, Mother enrolled in a drug treatment program, but on April 16, 2013, she was discharged for noncompliance for refusing random drug testing and being a no-show on another occasion. In March and April 2013, Mother failed to appear for several weekly drug testing appointments. Mother failed to visit Greg on a regular basis, failed to attend scheduled visits and failed to call the caregivers to cancel or reschedule visits, failed to attend an arranged doctor's appointment for Greg without informing the caregivers she was going to miss the appointment, and failed to attend appointments with DCFS. Enid reported Mother had disappeared and she believed Mother was using drugs and had returned to a boyfriend who used drugs and who had abused Mother in the past.

On being contacted by DCFS, Mother gave no reasons for her noncompliance and failure to visit Greg.

**B.  The jurisdictional and dispositional hearing**

On May 15, 2013, a jurisdictional and dispositional hearing was held, at which Mother did not appear.  The juvenile court sustained the section 300 petition, removed Greg from Mother's custody, declared Greg a dependent of the court, and terminated family reunification services for Mother.

**C.  Events leading up to the section 388 petitions**

In May and July 2013, Mother was arrested for, respectively, failing to pay train fare and shoplifting clothing.  Mother stole the clothing to support her methamphetamine habit.  She had been living a transient lifestyle, and when interviewed by DCFS, Mother appeared disheveled, unkempt, and with "black" fingertips.

In August 2013, Mother told DCFS she was incarcerated but receiving anger management, parenting, and life skills classes in jail.  In September 2013, Mother informed DCFS the criminal court had ordered her to be released to an inpatient program.

In the meantime, Greg was reported to be thriving with Enid and Oscar.  Although he did not have the classic facial features of fetal alcohol syndrome, he was "'quite short'" and was "'considered at very high risk for developmental delays and disabilities.'"  Enid and Oscar were committed to adopting him.

On December 11, 2013, Mother filed a section 388 petition requesting the juvenile court change its order terminating family reunification services by reinstating family reunification services, which the court denied without a hearing.

On March 12, 2014, Mother filed a second section 388 petition, which is the subject of this appeal.  The petition requested the juvenile court change its order terminating family reunification services by reinstating family reunification services. Mother contended she had been clean and sober since July 2, 2013, and had been visiting Greg.  She urged she was on the fourth step of her 12-step drug program and attended classes daily.  She also attached negative drug test results and a letter from the inpatient program dated March 11, 2014, stating Mother attended and participated in program

4

activities, had been on target with treatment plans and remained consistent with appointments, met with her sponsor on a weekly basis, had completed step three of a 12-step program, had been bonding with Greg, and had been visiting him twice a week. The letter stated Mother "displays a positive attitude and willingness to take necessary steps to maintain long term sobriety. She is determined and highly motivated to regain custody of her son." Further, Mother urged the change in order was in Greg's best interest because it was in his best interest to be "with his biological mother," she could provide him with "the best care," she could provide for his basic needs as well as his emotional needs, and as the only child in her care, he would receive individualized attention.

On March 12, 2014, DCFS reported Mother had been residing in the inpatient treatment program since November 2013 and had been visiting Greg on a regular basis. Greg was a client of the regional center. He was strongly attached to Enid, Oscar, and maternal grandmother and was thriving in their care. During the first two months of Mother's enrollment in the inpatient program, Greg was brought to visit Mother for two hours once a week. In January 2014, Mother began visiting the family home every other week, advancing to weekly visits in February 2014. Greg was happy to see Mother and greeted her with hugs.

On March 12, 2014, the juvenile court denied Mother's second section 388 petition without a hearing. The juvenile court stated eight months had gone by before Mother enrolled in a program even though the court had informed Mother she immediately had to enroll in an inpatient program. The court noted at a minimum, Mother should have finished an inpatient program by now and currently should be in an aftercare program. The court noted there was not a sufficient change in circumstance and granting the section 388 petition was not in Greg's best interest. The court denied Mother's second section 388 petition without a hearing and proceeded to the section 366.26 hearing.

The juvenile court denied Mother's request for a contested section 366.26 hearing, stating Mother had only had monitored visits with Greg and had not been a parent to him. Mother argued she had visited consistently with Greg and she and Greg were attached to

each other. The juvenile court found Mother did not "come within the exceptions of (c)(1) (b)(1)," found Greg adoptable, and terminated parental rights. Mother appealed.

**DISCUSSION**

**A. The juvenile court did not abuse its discretion in summarily denying Mother's second section 388 petition**

Mother contends she presented prima facie evidence to support an evidentiary hearing on her second section 388 petition and therefore the juvenile court's summary denial of the March 12, 2014 petition was an abuse of discretion. We conclude the juvenile court did not abuse its discretion by summarily denying Mother's second section 388 petition without a hearing. As we explain, Mother's second section 388 petition made general, conclusory allegations which failed to establish a prima facie showing of changed circumstances or that the proposed change of order would promote Greg's best interests. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

*1. Section 388*

Section 388, subdivision (a)(1) states in pertinent part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall . . . set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." Section 388, subdivision (d) provides: "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . ."

"[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a

6

favorable decision on the petition." (*Ibid.*) We review the juvenile court's order for abuse of discretion. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) Changed, not changing, circumstances must be demonstrated. (*Ibid.*)

"[U]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) However, after termination of reunification services, it is presumed that continued care is in the best interests of the child. (*Ibid.*)

### 2. *Mother has failed to make a prima facie showing of changed circumstances*

Mother's arguments on appeal she had been sober for eight months, resided in a residential drug facility for four months, attended daily a "multitude of classes designed to maintain her sobriety," was drug testing negative, and reestablished her visits with Greg after she recovered from her relapse simply are evidence of, at most, changing, but not changed circumstances. As Mother admitted, incarceration helped her become sober, but it is unclear whether she would have become sober had she not been incarcerated. Mother failed to demonstrate a sustained success in treatment. Taken in the context of Mother's long erratic history, her current drug-free status is only an indication of a possible short-term improvement, which might or might not become sustained.

Mother has offered a bare scintilla of proof of changing, not changed, circumstances. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [mere prima facie showing of changing circumstances insufficient to justify hearing on section 388 petition after two years of removal].) We conclude the juvenile court did not abuse its discretion in finding Mother failed to make a prima facie showing of changed circumstances.

### 3. *Mother has failed to make a prima facie showing that a change in the juvenile court's order would be in Greg's best interests*

On appeal, Mother contends reinstatement of reunification services would be in Greg's best interests based on their "documented good relationship and Mother's substantial progress with sobriety." In her second section 388 petition, Mother stated in conclusory fashion it was in Greg's best interest to be "with his biological mother," she could provide him with "the best care," she could provide for his basic needs as well as

7

his emotional needs, and as the only child in her care, he would receive individualized attention.

We conclude Mother has failed to make a prima facie showing that a change in order would be in Greg's best interests. (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 808 [mother's allegations failed to make prima facie showing child's best interests served by removal from lifelong caretakers and stable, permanent home to be returned to parent who remained at risk of returning to abusive partner].) Greg, a regional center client, was thriving under the loving and supportive care of Enid and Oscar. Although Greg appeared happy to see Mother on visits, she had never assumed a parental role to him. Rather, Enid, Oscar, and maternal grandmother provided primary care for him, and Enid and Oscar wished to adopt him. Mother's current sobriety was due in large part to her being arrested, incarcerated, and released into an inpatient program. Mother's petition did not show it was in Greg's best interests to deprive him of a permanent, stable home in exchange for an uncertain future with a mother who had no sustained track record of sobriety.

Mother failed to establish a prima facie showing of both a change of circumstances and a change of order would be in Greg's best interests. Accordingly, we conclude the juvenile court did not err by denying Mother a hearing on her second section 388 petition.

## B. Substantial evidence supports the juvenile court's order terminating parental rights

Mother contends the parental relationship exception to termination of parental rights applies because she "assumed a parental role over Greg since his birth, and her visits throughout the case were substantial and significant in establishing and developing a positive bond with her son." We disagree and conclude substantial evidence supports the juvenile court's conclusion the parental relationship exception to termination of parental rights does not apply.

Once the juvenile court has determined by clear and convincing evidence "that it is likely the child will be adopted, the court shall terminate parental rights and order the

8

child placed for adoption." (§ 366.26, subd. (c)(1).) "Adoption, where possible, is the permanent plan preferred by the Legislature. [Citations.] 'Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.' [Citation.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573–574.) If the court finds a compelling reason for determining that termination would be detrimental to the minor, the court shall not terminate parental rights but shall order legal guardianship or long-term foster care for the minor. (§ 366.26, subd. (c)(4)(A).) Section 366.26, subdivision (c)(1)(B) sets forth six circumstances where the court may forgo adoption and retain parental rights. One of the reasons is if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

The parental relationship must be more than "'frequent and loving contact.'" (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 424.) "[T]he court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) "The exception must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*Id.* at pp. 575–576 [substantial evidence supported the juvenile court's order terminating parental rights where relationship was one of friendship and termination of relationship would not be detrimental to the minor, who had been a dependent for three-quarters of her young life and needed a stable, permanent home].)

9

"When contesting termination of parental rights under the statutory exception that the parent has maintained regular visitation with the child and the child will benefit from continuing the relationship, the parent has the burden of showing either that (1) continuation of the parent-child relationship will promote the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents [citation] or (2) termination of the parental relationship would be detrimental to the child. [Citation]." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

"[T]he juvenile court's decision whether an adoption exception applies involves two component determinations: a factual and a discretionary one. The first determination—most commonly whether a beneficial parental or sibling relationship exists, although section 366.26 does contain other exceptions—is, because of its factual nature, properly reviewed for substantial evidence. [Citation.] The second determination in the exception analysis is whether the existence of that relationship or other specified statutory circumstance constitutes 'a compelling reason for determining that termination would be detrimental to the child.' (§ 366.26, subd. (c)(1)(B); [citation].) This '"quintessentially" discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption,' is appropriately reviewed under the deferential abuse of discretion standard. [Citation.]" (*In re K.P.* (2012) 203 Cal.App.4th 614, 622.)

We conclude Mother has failed to show the benefits of continuing the relationship with Mother outweigh the benefits Greg will receive from the permanence of being adopted. First, Mother has failed to show she maintained regular visitation and contact with him. He was removed from Mother shortly after he was born. While she visited him regularly immediately after he was born, a few months later she began missing scheduled visits. She failed to appear for a scheduled doctor's appointment for Greg. Subsequently, she disappeared and did not visit or contact him for months. While Mother began regularly visiting Greg after her incarceration and release to an inpatient program, increasing to once or twice a week visits, we conclude substantial evidence supports the

10

juvenile court's determination she had not maintained regular visitation and contact with Greg as required.

Second, Mother also has failed to show Greg would benefit from continuing the relationship. Although Mother claims a nurturing and solid bond with him and that she has performed the "full gamut of functions a parent provides for a child," the evidence is insufficient to show she occupied a parental role in his life. She has shown no more than frequent and loving contact in the role of a friendly visitor. Further, Greg, who is a regional center client at risk of developmental delays, was removed from Mother's custody when he was days old and has spent all of his life with his prospective adoptive parents, with whom he has bonded and who provide appropriate and adequate care and a nurturing environment.

Accordingly, Mother has failed to show that termination of parental rights would result in detriment to Greg that would outweigh his need for a permanent, stable home with adoptive parents to whom he is already bonded.

## DISPOSITION

The juvenile court's March 12, 2014 orders denying Edith G.'s section 388 petition without a hearing and terminating parental rights are affirmed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11